IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARK K. BEEBE,<br><br>    Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CR. NO. 14-00690 DKW<br>CV. NO. 16-00388 DKW-KSC<br><br>**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

On October 6, 2014, Petitioner Mark K. Beebe pled guilty, pursuant to a Plea Agreement, to knowingly and intentionally conspiring with three others "to distribute and to possess with intent to distribute, fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers." *See* Mem. of Plea Agreement 1–2, ECF No. 55. Beebe was later sentenced to 87 months' imprisonment and 5 years of supervised release. Judgment 2–3, 5, ECF No. 108.

Relying on 28 U.S.C. § 2255, Beebe now seeks to vacate his guilty plea and/or sentence, based on the alleged ineffective assistance of counsel. *See* Am. Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 147 [hereinafter Section 2255 Motion].

After careful consideration of the instant motion, the briefs, the materials in the Record, and the relevant legal authority, Beebe's Section 2255 Motion is DENIED. The Court also DENIES a Certificate of Appealability.

## BACKGROUND

**I.     Indictment And Guilty Plea**

On July 17, 2014, a Grand Jury returned an Indictment charging Beebe and three others with several drug-related felony offenses under Titles 18 and 21 of the United States Code. Indictment 1–2, ECF No. 2. The Magistrate Judge appointed Richard D. Gronna, Esq. on July 22, 2014 to represent Beebe throughout the proceedings. CJA 20 Appointment of & Authority to Pay Ct. Appointed Counsel, ECF No. 35.

On October 6, 2014, the parties entered into a Plea Agreement (ECF No. 55). In that agreement, Beebe acknowledged that he fully understood—and had consulted with Mr. Gronna regarding—the charges against him and agreed to plead guilty to Count 1:

> 1.    [Beebe] acknowledges that he has been charged in the Indictment with conspiring to distribute and possess with intent to distribute fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers, in violation of Title 21, [U.S.C.], Sections 846, 841(a)(1) and 841(b)(1)(A) (Count 1), and distributing fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers in violation of Title 21, [U.S.C.], Sections 841(a)(1) and 841(b)(1)(A) (Count 7).

2. [Beebe] has read the charges and allegations against him contained in the Indictment, and these charges and allegations have been fully explained to him by [Mr. Gronna]. *In making his decision to plead guilty, [Beebe] has had the full opportunity to consult with [Mr. Gronna], and he is fully satisfied with the legal representation and advice he has received from [Mr. Gronna].*

3. [Beebe] fully understands the nature and elements of the crimes with which he has been charged.

4. [Beebe] will enter a voluntary plea of guilty to Count 1 . . . of the Indictment. In exchange, the [Government] agrees to dismiss the remaining counts of the Indictment against the defendant at the time of sentencing.

. . . .

18. [Beebe] and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce [Beebe] to plead guilty.

Plea Agreement ¶¶ 1–4, 18 (emphasis added). The agreement further states that Beebe "enters this plea because he is in fact guilty of the crimes charged against him" and reiterates that "this plea is voluntary and not the result of force or threats." Plea Agreement ¶ 6. In the Plea Agreement, Beebe also acknowledged the potential penalties that he faced:

7. *[Beebe] understands that the statutory penalty for the offense charged in Count 1 to which he is pleading guilty is a mandatory minimum term of imprisonment of ten (10) years*, a statutory maximum term of imprisonment of life, a term of supervised release of not less than five (5) years and up to life, and a fine of up to $10,000,000, or both. See 21 U.S.C. § 841(b)(1)(A).

Plea Agreement ¶ 7 (emphasis added). Beebe additionally agreed to waive his rights to appeal or to collaterally attack his sentence in most circumstances, except, as relevant here, to the extent he based such a challenge on a claim of ineffective assistance of counsel. Plea Agreement ¶ 13.

Beebe's change-of-plea hearing occurred on October 6, 2014. *See* Tr. of Hr'g, Oct. 6, 2014, ECF No. 126 [hereinafter Tr. of COP Hr'g]. At the hearing, the Court confirmed that Beebe understood the "essential terms" of the Plea Agreement, including the penalties to which a guilty plea would expose him:

> THE COURT: All right. Now, Mr. Loo [the Assistant United States Attorney ("AUSA") representing the Government], what is the maximum penalty that the defendant faces for pleading guilty to Count 1?
>
> MR. LOO: Yes, Your Honor, with respect to Count 1 of the indictment *that offense is punishable by a mandatory minimum term of imprisonment of ten years*; a statutory maximum term of imprisonment of life; a fine of up to $10 million; a term of supervised release of not less than five years and up to life; and a $100 special assessment.
>
> THE COURT: All right. Mr. Gronna, do you agree with the potential penalties as articulated by AUSA Loo with regard to what your client faces for pleading guilty to Count 1?
>
> MR. GRONNA: Yes.
>
> THE COURT: All right. *Mr. Beebe, do you understand the maximum penalty that you face for pleading guilty to Count 1 as well as the mandatory minimum?*

4

> THE DEFENDANT: *Yes*.

Tr. of COP Hr'g at 13–16 (emphasis added). Beebe further acknowledged that the Court would not be bound by the Plea Agreement or any other recommendation in fashioning Beebe's Sentence:

> THE COURT: Okay. Do you understand that despite any discussions that you may have had with your own attorney or with the attorney for the government regarding the type of sentence you might receive, the length of the sentence you might receive, or with regard to any sentencing recommendation that counsel may wish to provide to the Court, I am not bound by any of those discussions or recommendations and I still could impose a sentence more severe than what you anticipate up to the maximum afforded by law; do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Has anyone, Mr. Beebe, made any promise to you with regard to what your sentence will be?
>
> THE DEFENDANT: No, sir.

Tr. of COP Hr'g at 24–25. After accepting Beebe's guilty plea, the Court scheduled a sentencing hearing for April 2015.

## II. <u>Sentencing And Other Post-Sentencing Matters</u>

The United States Probation Office filed Beebe's revised Presentence Investigation Report ("PSR"; ECF No. 110) on April 23, 2015. That same day, Mr. Gronna filed a Motion seeking a sentence below the recommended guideline range. That motion highlights Beebe's disadvantaged upbringing, his struggle with

5

depression and anxiety, and the coercion he felt from a "drug lord" named John Penitani[1] who, Beebe alleges, caused him to commit the offense contained in Count 1.  Def.'s Mot. for Sentence Below Recommended Guideline Range 1–5, ECF No. 105 [hereinafter Def.'s Sentencing Mot.].  The motion also discusses many other factors for the Court to consider in support of a downward variance.  Def.'s Sentencing Mot. 5–6.  Those factors include: Beebe's "mental and emotional abuse as a child" and "[p]overty and lack of education"; his "[c]urrent treatment for medical issues"; and "[f]amily responsibilities to the welfare and support of his three minor children and the two minor children of his current girlfriend."  Def.'s Sentencing Mot. 5–6.

During the April 27, 2015 sentencing hearing, the Court adopted the factual findings of the revised PSR, granted the Government's oral motion to dismiss Count 7 of the Indictment as to Beebe (*see* Tr. of Hr'g. at 3, 22, Apr. 27, 2015, ECF No. 127 [hereinafter Tr. of Sentencing Hr'g]), and sentenced Beebe to 87 months' imprisonment, 5 years of supervised release, and a $100.00 special assessment (*see* Judgment 2–3, 5).

Beebe filed the Section 2255 Motion (ECF No. 137) on July 1, 2016.  In it, he alleges ineffective assistance of counsel as grounds for the Court to vacate his guilty plea and sentence.  Section 2255 Mot. 5–7.  Beebe also moves for "an

---

[1] For consistency, this Order adopts the spelling of Mr. Penitani's name from *United States v. Penitani*, 1:13-cr-00653-SOM-1 (D. Haw. June 20, 2013).

evidentiary hearing to expand the record and offer testimony of the parties in order to conclusively establish counsel's ineffectiveness during both 'critical stages' of plea negotiation and sentencing that clearly prejudice[d] Mr. Beebe." Am. Mem. of Law in Supp. of Pet'r's 28 U.S.C. § 2255 Pet. 21, ECF No. 147.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Id*.

To prevail on an ineffective assistance of counsel claim, a Section 2255 petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness—i.e., that counsel's performance was deficient—*and* (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"—i.e., that the deficiency was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 688, 692–94 (1984).

In addition, the court shall hold an evidentiary hearing on a petitioner's Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted. *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). That is, "[a] hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."

As set forth below, none of Beebe's allegations meet these standards.

## **DISCUSSION**

Beebe contends that Mr. Gronna's performance was deficient and prejudicial in three ways: (A) in "advising Mr. Beebe that by pleading guilty he would receive probation and home confinement when in fact, the U.S. Sentencing Guidelines does not authorize probation for this type of criminal conduct"; (B) by "fail[ing] to investigate a viable claim of duress" after Beebe advised counsel that he "was threatened by [Penitani] to perform certain illegal acts or either Mr. Beebe or his family would be harmed"; and (C) by not presenting "easily available evidence to support that Mr. Beebe suffered mental and emotional illnesses" that would "support a downward departure." Section 2255 Mot. 5–7, ECF No. 137.

The Court finds all three grounds to be unpersuasive.

## I. Beebe Has Not Shown That Mr. Gronna, As Trial Counsel, Provided "Ineffective" Assistance.

To prevail on his ineffective assistance claim, Beebe must show that: "(1) his trial counsel's performance 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir.) (quoting *Strickland*, 466 U.S. at 688, 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.")), *cert. denied*, 562 U.S. 965 (2010). A petitoner satisfies the second prong of the *Strickland* test where "there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Mahoney*, 611 F.3d at 986 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *cf. Strickland*, 466 U.S. at 693 ("It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding.") (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866–67 (1982)). Beebe has neither shown that the three challenged aspects of Mr. Gronna's conduct were deficient, nor has Beebe shown that the allegedly deficient conduct caused him prejudice. Thus, the Section 2255 Motion is DENIED.

### A. Mr. Gronna Did Not Mislead Beebe As To His Potential Sentencing Exposure.

Beebe's first issue with Mr. Gronna's performance derives from an apparent dissatisfaction with his sentence. Beebe argues that, "[a]t the outset of trial counsel's representation," Mr. Gronna incorrectly "advised" Beebe that "he was looking at probation or house arrest." Am. Mem. in Supp. 11–13. As a result, Beebe continues, "[Mr. Gronna]'s assurance" as to Beebe's likely sentence "played a kjey [sic] role in Mr. Beebe's decision to enter a plea." Am. Mem. in Supp. 12. As set forth below, Beebe's statements regarding his understanding of his sentencing exposure are contradicted by the facts of the case.

In a sworn declaration dated October 3, 2016, Mr. Gronna disputes Beebe's assertion in unequivocal terms:

> I never informed Mr. Beebe that he could be sentenced to a term of probation[;] to the contrary, I specifically told him that he could not be sentenced to probation as he pled guilty to an offense that carried a mandatory minimum sentence, and that his sentencing range would be in zone D of the [guidelines].

Gronna Decl., Resp. to Section 2255 Mot., Ex. 2, at ¶ 3, ECF No. 148-2; *see Strickland*, 466 U.S. at 690 ("[Counsel] is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *cf. Christopher v. United States*, 831 F.3d 737, 739–40 (6th Cir. 2016) ("Once we accept [trial counsel]'s version of events, that dooms [the petitioner]'s § 2255 motion. . . . It means [trial counsel] rendered effective

10

assistance of counsel. And it means [Petitioner]'s knowing and voluntary decision to go to trial should be respected, painful though the effects of that decision may now be.").

Perhaps more importantly, Beebe's assertion is contradicted by the Plea Agreement he signed and his colloquy with the Court at his change of plea hearing. The Plea Agreement clearly sets forth the sentencing guideline parameters to which Beebe's plea exposed him—including the mandatory minimum sentence prescribed by statute:

> 7. The Defendant understands that the statutory penalty for the offense charged in Count 1 to which he is pleading guilty is a mandatory minimum term of imprisonment of ten (10) years, a statutory maximum term of imprisonment of life, a term of supervised release of not less than five (5) years and up to life, and a fine of up to $10,000,000, or both. See 21 U.S.C. § 841(b)(1)(A).

Plea Agreement ¶ 7. Beebe assured the Court that he had read and understood this and every other provision of his Plea Agreement before signing it. Tr. of COP Hr'g at 14–15.

Moreover, at the Court's request during the change of plea hearing, the Assistant United States Attorney described the "essential" terms of Beebe's Plea Agreement. The AUSA noted that Beebe faced, among other things, a "mandatory minimum term of imprisonment of ten years [and] a statutory maximum term of imprisonment of life." Tr. of COP Hr'g at 17. Mr. Gronna confirmed that the

11

AUSA's recitation of the sentencing terms was accurate (Tr. of COP Hr'g at 18); Beebe confirmed both that "[he] and Mr. Gronna [had] discussed how the sentencing guidelines might apply to [Beebe's] case" (Tr. of COP Hr'g at 24); and Beebe stated that other than as reflected in the terms of his Plea Agreement, he had not been promised anything by anyone—such as a promise of a reduced sentence—in exchange for pleading guilty (Tr. of COP Hr'g at 13, 15, 25). In short, whatever Mr. Gronna may have "at the outset" advised Beebe regarding a potential sentence, it is clear that by the time of Beebe's Plea Agreement and guilty plea in October 2014, Beebe was acutely aware that not only was probation and house arrest not on the table, but that he faced a mandatory minimum term of imprisonment of ten years and as much as life. That much, given the current record, is unmistakable and belies Beebe's revisionist statements to the contrary. *Cf. Anderson v. United States*, 338 F.2d 618, 619–20 (9th Cir. 1964) (declining to set aside conviction on ground that defendant's counsel advised him to plead guilty in order to receive a suspended sentence where "the record demonstrate[d] that when he pled . . . , he had previously learned that he could get a jail sentence, whatever he might have been told" by counsel); *Gao v. United States*, 375 F. Supp. 2d 456, 463–64 (E.D. Va. 2005) (explaining that statements made by a pleading defendant under oath during a Rule 11 colloquy "'carry a strong presumption of verity,' and require the dismissal of any § 2255 motion relying on

contrary allegations absent 'extraordinary circumstances.'") (quoting *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005)).

> **B.    There Is No Evidence That Mr. Gronna Unreasonably Failed to Investigate A Claim Of Duress.**

Beebe asserts that John Penitani, a known drug trafficker, forced him to participate in the methamphetamine conspiracy Beebe was charged with, that he had a viable defense of duress based on Penitani's conduct, but that Mr. Gronna "neither conduct[ed] a reasonable investigation nor made a showing of strategic reasons for failing to do so." Am. Mem. in Supp. 16–17 (quoting *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002)).

Once more, the facts in the record contradict Beebe's recollection. Mr. Gronna *did* investigate whether Beebe had a basis to assert duress as a defense. According to Mr. Gronna:

> 12.  After being Indicted, Mr. Beebe cooperated and in being debriefed by the Government he claimed that a major drug distributor, John Penitani, who had been previously indicted in Cr. No. 13-0653 SOM, had been using Beebe's home to store methamphetamine.
>
> 13.  Mr. Beebe stated that Mr. Penitani and his other co-conspirators had made threats to Mr. Beebe that he had to store and distribute Penitani's drugs.

Gronna Decl. ¶¶ 12–13. Mr. Gronna followed up on this lead by asking the Government about Mr. Penitani and his co-conspirators' indictments and statements. Mr. Gronna was told that those defendants had never mentioned any

association with Beebe, despite having every motivation to do so, given their own cooperation with the Government:

> 16. I was informed that following Mr. Penitani's arrest[,] Penitani and others who were also included in the Penitani Indictment had cooperated with the Government.
>
> 17. In making inquiry as to whether Mr. Beebe was mentioned by Mr. Penitani or his co-conspirators, I was informed that Mr. Penitani and his co-conspirators never made mention of having any association with Mr. Beebe, or that they had been using Mr. Beebe to store his drugs at Mr. Beebe's residence as Mr. Beebe had claimed.
>
> 18. . . . . Mr. Beebe also [i]nquired with the [AUSA] if at any time anyone from Mr. Penitani's conspiracy had made mention of Mr. Beebe's association with Mr. Penitani, and there had not been any mention of Mr. Beebe.

Gronna Decl. ¶¶ 16–18. Without additional information to go on, Mr. Gronna concluded that Beebe could not meet the legal requirements for establishing duress:

> 14. I discussed with Mr. Beebe the elements that he would have to establish to have the Court give a duress jury instruction [including] that Penitani made an immediate threat of death or serious bodily injury, that Mr. Beebe had a well-grounded fear that the threat will be carried out, and that prior to Mr. Beebe meeting with agents to sell them drugs he had a lack of a reasonable opportunity to escape the threatened harm.
>
> 15. I discussed with Mr. Beebe that while he might be able to establish the first two prongs of the defense, *he would not have been able to establish the last prong*, that he lacked a reasonable opportunity to escape the threatened harm, as he was more than able to contact law enforcement to assist him with dealing with Mr. Penitani and his crew before he met with

14

>agents who posed as potential buyers for the drugs he claimed
>he would sell them.

Gronna Decl. ¶¶ 14–15 (emphasis added). Beebe did not provide Mr. Gronna with any additional information relevant to duress that might have made it *reasonable* to investigate further.[2] *See Keller*, 902 F.2d at 1395 (denying petitioner's § 2255 petition, in part, because petitioner "cannot show that he had no reasonable opportunity to escape the threatened harm") (citing *United States v. Shapiro*, 669 F.2d 593, 596–97 (9th Cir. 1982)). Mr. Gronna's legal conclusion—that "duress" would not have been a viable defense—therefore cannot form the basis of an ineffective-assistance-of-counsel claim under the circumstances presented here. *See Strickland*, 466 U.S. at 690–91; *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500 (S.D.N.Y. 2005) ("[D]efense counsel's decision to pursue a legal innocence defense, rather than the less-compelling alternatives urged by [defendant], is purely a matter of sound trial strategy and cannot support a claim of constitutional ineffectiveness." (internal citation omitted)); *cf. United States v. Ferreira-Alameda*, 815 F.2d 1251, 1254 (9th Cir. 1986) ("Mere criticism of a

---

[2]In fact, as of the date of this Order, and despite having had ample briefing opportunities, Beebe has still not identified any facts addressing Mr. Gronna's stated concerns or supporting his duress claims generally. *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) ("When the alleged deficiency is a failure to investigate, [petitioner] must provide 'the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'") (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)); *cf. United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir. 1990) ("On a claim of ineffective assistance based on failure to advise a defendant of a potential defense, 'resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.'" (quoting *Hill*, 474 U.S. at 59)).

tactic or strategy is not in itself sufficient to support a charge of inadequate representation.") (quoting *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir.), *cert. denied* 474 U.S. 979 (1985)), *as amended* (9th Cir. Apr. 24 and May 22, 1987).[3]

Mr. Gronna's assistance to Beebe with respect to the possibility of asserting the defense of duress was not ineffective.[4]

### C. Mr. Gronna Raised—And The Court Considered—Beebe's Mental/Emotional Health As A Mitigating Factor At Sentencing.

Beebe also argues that Mr. Gronna "failed to investigate, t[o] discover[,] or [to] move for the court to consider a downward departure based upon Mr. Beebe['s] long-time mental and emotional condition." Am. Mem. in Supp. 21. The failure to do so, according to Beebe, represents the third and final way in which Mr. Gronna shirked his professional responsibilities.

The Court was cognizant of Beebe's mental and emotional history at the time of sentencing. Beebe's PSR included detailed accounts of Beebe's

---

[3] Moreover, Mr. Gronna found other strategic ways to incorporate Beebe's assertions—namely, by incorporating the alleged evidence of duress into an April 23, 2015 sentencing memorandum requesting a downward variance. *See* Def.'s Sentencing Mot. 3–4; Gronna Decl. ¶ 20.

[4] The Court notes that Beebe expressed his *satisfaction* with Mr. Gronna's representation at his October 2014 change of plea hearing. Given that Beebe had discussed the duress issue with Mr. Gronna prior to that hearing, Beebe's satisfaction must have included Mr. Gronna's handling of the duress issue. Beebe's statements to the contrary now, after sentencing, strongly suggest that his dissatisfaction stems from the sentence he received, not from Mr. Gronna's performance. *See Gao*, 375 F. Supp. 2d at 464 (holding that defendant's statements of satisfaction with counsel "preclude consideration of any ineffective-assistance claim the grounds for which were apparent to petitioner at the time she entered her plea").

16

upbringing (PSR ¶¶ 49–52) and family relationships (PSR ¶¶ 53–58); a summary of Beebe's mental health issues and treatment, including his girlfriend's report that defendant became "extremely depressed and isolated from the family" and "voluntarily sought mental health counseling, which he has been attending regularly" (PSR ¶ 57); his mother's statement that abuse at home led Beebe to "[fall] into a depression" and eventually be "hospitalized for approximately one month as a teenager at Castle Hospital" (PSR ¶ 58); and Beebe's own statements about "suffering from feelings of depression and anxiety for the past few years" (PSR ¶ 61), being diagnosed with "Depression, Chronic, Severe Anxiety" at some point in 2014, and being prescribed anti-depressants and participating in weekly counseling sessions (PSR ¶ 63). As a result, even if defense counsel said nothing of Beebe's mental state at sentencing, Defendant would not have been prejudiced. But counsel did far from nothing. Defendant's motion for a downward variance similarly highlighted, among other things, Beebe's fragile mental state and well-being. *See* Def.'s Sentencing Mot. 3; Tr. of Sentencing Hr'g at 9, 11, 14-16.

For these reasons, Beebe has neither demonstrated that Mr. Gronna's representation at sentencing was deficient, nor that he was prejudiced by Mr. Gronna's actions.

## II. Evidentiary Hearing

The Court is required to hold an evidentiary hearing on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The issues raised here can be conclusively decided on the basis of the evidence in the record. *See United States v. Quan*, 789 F.2d 711, 715 (9th Cir.) ("Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required.") (citing *Farrow v. United States*, 580 F.2d 1339, 1360–61 (9th Cir. 1978) (en banc)), *cert. denied*, 478 U.S. 1033 (1986). As discussed above, all of Petitioner's contentions are contradicted by the facts and the law, so there is simply no reason for an evidentiary hearing. *Quan*, 789 F.2d at 715 (citing *United States v. Bronstein*, 623 F.2d 1327, 1330 (9th Cir.), *cert. denied*, 449 U.S. 842 (1980)); *see also Keller*, 902 F.2d at 1395 ("To warrant an evidentiary hearing, a petitioner must 'make specific factual allegations which, if true, would entitle him to relief.'") (quoting *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)).

## III. Certificate of Appealability

In dismissing a Section 2255 Motion, the Court must address whether Beebe should be granted a Certificate of Appealability ("COA"). *See* Rules Governing Section 2255 Proceedings R. 11(a). A COA may issue "only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. MacDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). Based on the above analysis, the Court finds that reasonable jurists could not find the Court's rulings debatable. Accordingly, the Court DENIES the issuance of a COA.

## **CONCLUSION**

For the reasons stated above, the Court DENIES Beebe's Section 2255 Motion and DENIES a Certificate of Appealability. The Clerk of the Court shall enter judgment in favor of the United States and close the case file.

IT IS SO ORDERED.

DATED: May 26, 2017 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

---

Beebe v. United States of America; CR 14-00690-DKW; **ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**